**UNITED STATES v. BARNETT, Bank Com'r, et al.**

**No. 837.**

District Court, N. D. Oklahoma.

July 5, 1934.

John M. Goldesberry, U. S. Atty., and A. E. Williams, Asst. U. S. Atty., both of Tulsa, Okl.

M. B. Cope, of Oklahoma City, Okl., and Roscoe E. Harper and Gentry Lee, both of Tulsa, Okl., for defendants.

Abernathy & Howell, of Oklahoma City, Okl., amicus curiæ.

FRANKLIN E. KENNAMER, District Judge.

This action was instituted by the United States, suing on its own behalf, and on behalf of George Smith, John Smith, and Elizabeth Smith, unallotted minor Osage Indians, seeking a preferred claim against the assets of the First Commerce Bank of Ralston, Okl., which is being liquidated by the bank commissioner of the state of Oklahoma, because of its insolvency. The amended bill of complaint alleges that Esther Berry Smith, restricted Osage allottee No. 104, died intestate on January 11, 1925. At that time she had to her credit in the Osage Indian Agency the sum of $117,804.09. She was survived by her husband, a white man, and the three minor children of one-half Osage Indian blood, for whom this action is instituted. On January 27, 1925, an administrator was appointed of her estate, and on that date the disbursing agent of the Osage Indian Agency paid the sum above mentioned, which was held by said agency to the credit of Esther Berry Smith, to the administrator. On March 25, 1925, as an accumulation thereto, the disbursing agent delivered to the administrator $13,203.12.

It is further alleged that the administrator delivered to each of the minor children, through their guardian, at various dates, sums of money totalling $22,378.79 for each of said minors, this sum representing the distributive share of said minor heirs in the estate of their mother. The guardian of the minors invested various sums of this money in certificates of deposit of the Bank of Commerce of Ralston, Okl., which bank, through its officers, received said sum with full knowledge of its original and intermediate source. The Bank of Commerce was thereafter merged with the First National Bank of Ralston and became the First Commerce Bank of Ralston, and all of said funds so received by the original bank became the deposit of the First Commerce Bank of Ralston.

The bill of complaint further alleges that the sums of money described therein were

wrongfully paid to the administrator and guardians by the Osage Indian Agency. It further alleges that on or about August 1, 1932, by resolution of its board of directors, the bank was declared insolvent and placed in voluntary liquidation under direction of the state bank commissioner of Oklahoma; its doors were closed and it was placed under the management and control of the state bank commissioner for liquidation. The insolvency of the bank is pleaded and the voluntary liquidation and placing the bank under the control of the bank commissioner of Oklahoma, constituted an act of bankruptcy as contemplated by section 3466, Revised Statutes of the United States (31 USCA § 191). The bill definitely describes the deposits in the bank of the three minors for whom the action is maintained, and pleads that the bank is in process of liquidation; that the funds or deposits belong to the Secretary of the Interior of the United States because they are restricted funds belonging to restricted Osage Indians, and were received by the bank as such. The purpose of the action is to establish priority of the deposits as a claim against the insolvent bank, and to enjoin the state bank commissioner from paying out funds of the failed bank until the claim of the United States is paid in full. It is alleged that the bank commissioner has sufficient funds to pay the claim of plaintiff, but funds are insufficient to pay all creditors of the failed bank, and that the guardians of the Osage Indian minors who deposited the restricted funds in the failed bank are the duly appointed and acting guardians of the minors.

Section 3466, Revised Statutes of the United States (31 USCA § 191), provides: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The case comes on for consideration upon the defendants' motion to dismiss, in which it is urged that the United States does not have legal capacity to maintain the action; that there is another action pending between the same parties and involving the same subject-matter; that this court is without jurisdiction for the reason that it is an attempt to sue the state of Oklahoma; that there is a defect of parties plaintiff, in that the guardian of the Osage Indian minors is a necessary and proper party plaintiff; and, finally, that the bill does not state facts sufficient to constitute a cause of action.

Only one reason is seriously relied upon for dismissal of the action, and it is the ground that insufficient facts are alleged for a cause of action. There can be no doubt that the United States is vested with authority to maintain an action for restricted members of the Osage Tribe of Indians. No showing has been made, and none appears from complainants' bill, that another action is pending between the same parties, involving the same subject-matter. However, if such appeared in the bill of complaint, it would not be ground for dismissal. Two actions between the same parties involving the same cause of action may proceed at the same time in courts of concurrent jurisdictions, and the first final judgment, although that may be in the action last brought, renders the issues res judicata in both actions. McDougal v. Black Panther Oil & Gas Co. (C. C. A.) 273 F. 113. The action is against the state bank commissioner and the liquidating agent of the failed bank, and is not an action against the state of Oklahoma. The motion further sets up that the guardian of the minors is a necessary and proper party to the action, but this was not urged in support of the dismissal. I am of the opinion that the guardian of the minors is not a necessary party to the action, as the United States has a superior guardianship over all restricted members of the Osage Tribe of Indians, and that guardians appointed for such minors by state courts are mere agents of the federal government in administering the affairs of such restricted Indians, subject to the approval of the Secretary of the Interior, through the Indian offices.

The serious question involved is whether the bill of complaint sets up facts sufficient to state a cause of action. There is no controversy over the insolvency of the bank in which the deposits were made, as the bill alleges such facts, and the motion admits them. The only question for determination is whether the deposits made in the failed bank by the guardian of the three restricted minor Osage Indians is a debt due the United States, as contemplated by section 3466, Revised Statutes, and for which the United States is entitled to priority.

Defendants insist that the payment by the disbursing agent of the Osage Agency to the administrator was proper and legal, and refer to section 2 of the Act of February 27, 1925 (25 USCA § 331 note), as follows: "All funds of restricted Osage Indians of one-half or more Osage Indian blood inherited by or bequeathed to them accruing to their credit and which are subject to supervision as above provided may, when deemed to be for the best interest of such Indians, be paid to the administrators of the estates of deceased Osage Indians or direct to their heirs, or devisees, in the discretion of the Secretary of the Interior, under regulations to be promulgated by him. The Secretary of the Interior shall pay to administrators and executors of estates of such deceased Osage Indians a sufficient amount of money out of said estates to pay all lawful indebtedness and costs and expenses of administration, when approved by him, and out of the shares belonging to heirs or devisees he shall pay the costs and expenses of such heirs or devisees, including attorneys' fees, when approved by him, in the determination of heirs or contests of wills."

The amended bill of complaint alleges that on the date of the appointment of the administrator, the Osage Indian Agency paid to said administrator the sum of $117,804.98, with full knowledge of the fact that the minors would receive two-thirds of the balance, less expense of administration, and on March 23, 1925, as an accumulation thereto, delivered to the administrator the further sum of $13,203.12. The defendants urged that since the above act became effective February 27, 1925, that the amended bill of complaint should be dismissed because the accumulation was paid after that date. It should be noted that the administrator was appointed, according to the allegations of the amended bill of complaint, on the 27th day of January, 1925, and that the sum of $117,804.98 was paid to the administrator before the above-quoted congressional act was passed. It should be further noted that the bill of complaint charges that the payments to the administrator were illegal, as contrary to congressional acts then in force. It should further be observed that under the above-quoted act of Congress, the funds of restricted Osage Indians of one-half or more Osage Indian blood may be paid to the administrators of the estates of deceased Osage Indians, when deemed to be for the best interest of such Indians. The bill of complaint charges unlawful and erroneous payments of the sums; the pleadings do not present a case of a payment for the best interest of such Indians, even as to the accumulation of $13,203.12 paid after the above act became effective. It therefore follows that the motion to dismiss cannot be sustained upon the Act of February 27, 1925.

The bill of complaint charges that all payments in excess of $500 per quarter for each minor were illegal by reason of the 1921 act of Congress (Act March 3, 1921 [41 Stat. 1249]), and this court has held that such excess payments were not legal, in United States v. Ralph Hughes, County Treasurer of Osage County et al. (D. C.) 6 F. Supp. 972, in following Work v. U. S. ex rel. Lynn, 266 U. S. 161, 45 S. Ct. 39, 69 L. Ed. 223. There can be no doubt that such excess funds in the hands of the guardian are restricted. Work v. U. S. ex rel. Lynn, supra; Hickey v. United States (C. C. A.) 64 F.(2d) 628. The 1925 act of Congress expressly reimposed restrictions on such excess payments. The various acts of Congress dealing with restricted funds of the Osage Indians were considered by this court in United States v. Ralph Hughes, County Treasurer of Osage County, supra, and it was held that the federal government, by reason of its superior guardianship over restricted members of the Osage Tribe of Indians, had reimposed restrictions over all funds, and property acquired with such funds, illegally paid to guardians and administrators of restricted members of the tribe, and that such funds or property were not subject to taxation by the state of Oklahoma. The United States could have successfully maintained an action against the bank, had it not become insolvent, for the recovery of the funds improperly paid to the administrator or guardian of the restricted minors, even though such funds were deposited in the bank by a guardian appointed by the state court. Congress granted such authority to the government in the 1925 act. But, in recovering such funds, it is only obtaining money due the United States in a representative capacity, for the benefit of dependent wards of the government.

The United States Supreme Court, in Bramwell v. United States Fidelity & Guaranty Company, 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368, held that the deposit of money in a bank by the superintendent of an Indian reservation, consisting of individual and tribal moneys, creates a debt from the bank to the United States, and that section 3466, Rev. Stat., set out above, giving the United States priority in payment of claims against an insolvent estate, should be liberally construed. The instant case and the cited case differ on

576

their facts; in that in this case the deposits were made by the guardian, and the funds were placed to the credit of the guardian, with knowledge upon the part of the bank and its officers that the funds were those of restricted Osage minors, while in the cited case the deposits had been made by the superintendent of the Klamath Indian Reservation, of Indian moneys, individual and tribal, and a bond had been given by the bank to the United States to secure payment of the deposit. It is settled that the United States is entitled to priority if the debt is due it, even if in a representative capacity, for a tribe or individual members of such tribe. In the instant case, the government had imposed restrictions upon the funds on deposit in the failed bank, and could have recovered such funds from either the guardian or the bank. The guardian had, as assets for the restricted minors, the obligation of the bank to repay the deposits, and this debt was held by him as an agent for the government. In liberally construing the section granting the United States priority, I am of the opinion that the deposits of the guardian for the restricted Osage minors are a debt due the United States, within the meaning and contemplation of section 3466.

There should be a limit to the liberality employed in construing section 3466. Certainly, a sufficiently liberal construction should be made to accomplish the objects of the act, and to prevent possible detriment to the federal government or its governmental activities by financial losses from insolvency of its debtors. The care and supervision of dependent Indians is a governmental activity which is entitled to protection under the statute. Bramwell v. United States F. & G. Co., supra. The depositors of the failed bank will suffer because of the priority of the United States, but it was within their power to have ascertained, in advance of depositing their funds in such bank, if any government funds were on deposit. Innocent persons, not guilty of negligence, should not suffer because of such priorities, and the statute should be construed to compel knowledge upon the part of the bank officials that the funds deposited were government or restricted funds, over which the government has supervision and control, before priority should be given to the prejudice of innocent depositors. If the bank officials have such knowledge, they can impart it to any depositor seeking information.

Defendants' motions to dismiss will be overruled and denied, and exceptions allowed.