**UNITED STATES v. JOHNSON, Bank Com'r, et al.**

No. 837.

District Court, N. D. Oklahoma.

Aug. 14, 1935.

C. E. Bailey; U. S. Atty., and Chester A. Brewer, Asst. U. S. Atty., both of Tulsa, Okl.

Roscoe E. Harper and Gentry Lee, both of Tulsa, Okl., and M. B. Cope and L. V. Orton, both of Oklahoma City, Okl., for defendants.

FRANKLIN E. KENNAMER, District Judge.

The purpose of this action is the establishment of priority of a debt alleged to be due the United States, and the enjoining of the disbursing of funds of a failed bank to other creditors. The amended complaint is referred to in a memorandum filed in this case, and reported in United States v. Barnett (D. C.) 7 F. Supp. 573.

The facts are that a full-blood Osage allottee, Esther Berry Smith, died intestate, leaving funds to her credit in the Osage Indian Agency, in the amount of $117,804.-98, which sum was paid to S. S. Mathis, the duly appointed administrator of the estate of the deceased, on January 27, 1925. On March 25, 1925, the disbursing agent of the Osage Agency paid an additional sum of $13,203.12 to the administrator as an accumulation. The heirs of the deceased were determined to be her husband and three minor, unallotted Osage children of one-half Indian blood. The administrator deposited the funds in banks in Osage county, and one Nannie J. Smith was ap-

pointed guardian of the minors. The administrator disbursed sums of money totaling $22,308.79 to the guardian of each of the minors, the sums representing the distributive shares of the minors in the estate of their deceased mother. · The funds disbursed by the Osage Agency to the administrator, and by the administrator to the guardian, came from royalties, interest on trust funds, and other moneys which had accrued to the credit of the deceased Osage allottee prior to her death. The guardian of the minors invested various sums of the money in certificates of deposit in the Bank of Commerce of Ralston, Okl., which bank was later merged with the First National Bank of Ralston, Okl. ·The bank was declared insolvent by its board of directors about August 1, 1932, and it was placed in charge of the Bank Commissioner of Oklahoma for liquidation. This suit is to establish the priority of the certificates of deposit, as well as the checking accounts deposited in the bank. It is unnecessary to consider the source of the deposits constituting the checking accounts, because of the view I have taken of the law involved. The theory upon which the case has been presented on behalf of the United States is that the certificates of deposit and the checking accounts represent debts due to the United States. If they are debts due the United States, there can be no question of the right of complainant to the relief sought. On the other hand, if they are not debts due the United States, then complainant must fail in the action.

The trial of the case upon the merits did not present many issues different from those considered on the motion to dismiss. Section 3466, Rev. Stat. (31 USCA § 191), provides for priority to the United States for debts due it in cases similar to those here presented.

■ The defendants contend that the disbursement of the funds by the Osage Indian Agency to the administrator was legal and properly disbursed, and that title to the funds was not in the United States; that even though title may be in the United States in a representative ·capacity, the same does not constitute a debt due to the United States within the meaning. of the federal statute; that the United States is barred from maintaining the action by laches; and that section 3466, Rev. Stat., has been repealed by congressional enactment with reference to funds of Osage Indians.

In my opinion, the defendants' first contention is unsound. It is my view that the funds were illegally disbursed by the Osage Agency to the administrator. Work v. U. S. ex rel. Lynn, 266 U. S. 161, 45 S. Ct. 39, 69 L. Ed. 223; United States v. Hughes (D. C.) 6 F. Supp. 972. It has been clearly held that the Congressional Act of March 3, 1921, 41 Stat. 1249, was improperly construed, resulting in the disbursement · by the Osage Agency of all of the funds to a guardian of an incompetent adult Osage Indian. This practice continued until the act was construed by the Supreme Court of the United States in Work v. U. S. ex rel. Lynn, supra. It is contended by the defendants that the construction of the act referred only to disbursements to guardians, and did not ·involve disbursements to administrators. They further contend that the Act of March 2, 1929, 45 Stat. 1478, is the first congressional limitation upon the distribution to administrators or executors. They insist that the 1929 act is a legislative construction; that the prior laws did not contain the limitation upon disbursements to administrators or executors. I cannot accept this as a sound contention, but it is not necessary to rest the decision of this case upon a construction of the statute.

■ I cannot adhere. to the contention of the defendants that section 3466, Rev. Stat., has been repealed by the congressional acts with reference to funds of Osage Indians. The authorities clearly establish the right of the United States to priority, even when the funds were deposited by agents of the federal government in representative capacities. I cannot accept the congressional acts with respect to the disbursement of Osage funds, or rather restrictions upon such disbursements, as in any manner affecting, either enlarging or limiting, section 3466, Rev. Statutes of the United States.

I do not deem it necessary to consider the defense of laches, but desire to predicate the decision of this case upon an analysis of the facts and the decided cases touching kindred questions. I have not been cited any case involving the facts here presented, and have not been able to find any controlling authorities.

The United States Supreme Court, in Bramwell v. United States Fidelity & Guaranty Company, 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368, held that the deposit of money in a bank by the Superintendent of

an Indian reservation, consisting of individual and tribal moneys, creates a debt from the bank to the United States. The court further held that section 3466, Rev. Stat., should be liberally construed. The United States Circuit Court of Appeals for the Tenth Circuit has construed section 3466, Rev. Stat., in a case involving a deposit by the cashier and special disbursing agent of the Five Civilized Tribes, Department of the Interior of the United States; the deposit having been made in the bank to his official credit, of individual Indian moneys of members of the Tribes held in trust by the United States. Payment of the deposit was secured by a bond, the surety paying the same to the disbursing agent, and instituting the action, resulting in a recovery. Barnett v. American Surety Company of New York (C. C. A.) 77 F. (2d) 225. The Circuit Court held that the indebtedness of the bank upon the deposit of Indian moneys was an indebtedness to the United States. The court remarked that the instruments affixed to the proof of claim filed by the disbursing agent showed that the deposit at all times was treated by the parties as a deposit of government funds, which in my opinion distinguishes the cited case from the one here presented.

It is contended by the complainant that the funds in question were trust funds of the United States for its dependent Indian ward, the deceased full-blood allottee; that such funds were erroneously paid to the administrator; and that the payment of the funds to the administrator did not relieve the funds of their trust character. The Act of February 27, 1925, 43 Stat. 1008 (25 USCA § 331 note), was passed after the Supreme Court construed the 1921 act in Work v. U. S. ex rel. Lynn, supra. The 1925 act reimposed restrictions upon all funds paid in excess of those fixed by the 1921 act, and reimposed restrictions upon all property in which such excess funds had been invested. It also provided for an accounting for such excess funds and permitted the Secretary of the Interior to retake possession of such funds or property in which they had been invested. There can be no doubt but that such excess funds were restricted, and that the federal government retained control over them; the control, however, was indirect, direct control being in the guardian, executor, or administrator. The cases referred to herein establish the United States' right to priority for debts due it either at law or

in equity, and whether governmental funds or funds held by it in trust for dependent Indian wards. The statute has been liberally construed to grant priority in cases where the deposits were made by federal agents connected with the administration of Indian affairs. Certainly, where government funds are on deposit, a debt is due the United States, and the statute gives priority. It is my view that the construction of section 3466 should not be extended to cover debts over which the federal government has supervision or control, unless such supervision and control are direct. The cases which have extended the doctrine and liberalized the construction of section 3466 to include debts contracted by the federal government on behalf of dependent Indian wards involved facts where the deposits were treated by the parties as deposits of government funds. The deposits were secured by bonds executed and delivered to the United States as obligee. In the instant case, the funds were not treated as government funds. No bonds were given to secure the repayment of the deposits and the funds were not subject to withdrawal by the federal government, or the superintendent of the Indian Agency, or other officials of such agency. Such funds were withdrawable only by the guardian or administrator depositing them. It would have been necessary for the United States, in the instant case, to have either obtained a transfer of the certificates of deposit or other proper assignment, in order to have been able to withdraw the funds, or to have maintained a suit for the recovery of the funds, by joining the guardian or administrator as a party defendant. It is insisted that the guardian or administrator is a government agent, and that his deposits are similar to the deposits of a superintendent or a disbursing agent. I cannot accept this contention as sound, because the guardian is not subject to the control of the federal government; his agency is an agency only in the broadest use of the word, in so far as the federal government is concerned. He is not subject to removal directly by the United States, but his tenure of office is dependent upon the county courts of Oklahoma, the courts capable of making such appointments. A superintendent of an Indian tribe is a federal agent; he is directly under the supervision and control of the United States; his tenure of office is dependent upon the federal government; and he is exclusively under the control of the United States. I, therefore, conclude

that the deposit of funds by a guardian of an Osage Indian, to whom funds have been disbursed illegally, is not a deposit of funds by the United States; it is a debt due the guardian and does not constitute a debt due the United States. "Debt" is a sum of money due upon contract. It is a sum of money due by certain and express agreements. A deposit of funds is certainly a debt, but it is a sum of money due upon a contract to repay it to the depositor, or for whose benefit the same was deposited. It has also been defined as a sum that one person is bound to pay another, or a sum of money due from one person to another. In the instant case, the sum of money was due the guardian who deposited it; it was not directly due to the United States. It was not treated as a government fund or deposit. No bond was given to secure its payment and no direct control was ever exercised over it by the United States.

█ In considering the question involved upon the motion to dismiss, it was my view that government funds shall not have priority to the prejudice of other depositors of banks, unless the bank officials had knowledge that such funds were governmental. Bramwell v. U. S. F. & G. Co., supra, and Barnett v. American Surety Company, supra, do not limit the rule to that extent. In view of those decisions, I must hold that government funds are entitled to priority even though the bank officials do not know of their governmental character. However, this rule does not conflict with my decision herein, because the funds on deposit in the bank in question were not government funds, but were funds of a guardian, although the guardian was under some control and supervision of the United States, with respect to certain funds. The funds were likewise under an indirect control and supervision of the federal government, but immediate control had not been exercised.

The funds were not governmental funds and were not treated as such; no bond was given to secure the repayment, and I do not believe that section 3466 should be construed to grant priority to the guardian of the three minor, unallotted, half-blood Osage Indians.

My conclusion is that the title to the funds was in the guardian for the benefit of the Indian minors, heirs of the deceased allottee.

Decree may be entered for the defendants.