BRAMWELL, SUPERINTENDENT, v. UNITED
STATES FIDELITY & GUARANTY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT.

No. 192.  Argued November 23, 1925.—Decided January 11, 1926.

1. Indebtedness of a bank for Indian moneys, individual and tribal,
   deposited with it by the Superintendent of an Indian Reservation
   and secured by a bond given by the bank to the United States, is
   an indebtedness to the United States, within Rev. Stats. § 3466.
   P. 487.
2. Section 3466, Rev. Stats., is to be liberally construed in favor of
   the United States. *Id.*
3. The Priority Act extends to all debts due the United States from
   insolvent living debtors when their insolvency is shown in one of
   the ways specified in § 3466.  P. 487.
4. The specified ways include all cases in which the insolvent debtor
   makes a voluntary assignment of his property, without regard to
   the purpose or manner of the assignment, and all in which an act
   of bankruptcy is committed under the laws of a State or a national
   bankruptcy law; and the Act does not expressly require that the
   debtor should be divested, or that the person on whom is im-
   posed the duty to pay the United States first, shall have become in-
   vested, with the title to the debtor's property.  P. 488.
5. An act may be "an act of bankruptcy" within § 3466, although
   the debtor, being a bank, is excepted from the operation of the
   Bankruptcy Law.  P. 489.
6. Construed together, §§ 3466 and 3467 mean that a debt due the
   United States is required first to be satisfied when possession and
   control of the insolvent's estate are given to any person charged
   with the duty of applying it to payment of the debts of the in-
   solvent as the rights and priorities of creditors may be made to
   appear.  P. 490.
7. Where the property and business of an Oregon bank were placed,
   through a resolution of its directors, in the exclusive possession and
   control of the State Superintendent of Banks to be administered
   and disposed of for the benefit of creditors pursuant to Oregon Ls.
   §§ 6220–6223, under which the Superintendent performs the func-
   tion of assignee, receiver, or trustee for the liquidation of the debts

of the insolvent, *held* that, within the meaning of the Priority Act, there was a voluntary assignment; and also an act of bankruptcy within the definition of the Bankruptcy Law. P. 490.

8. General expressions in an opinion are to be taken in connection with the case under consideration. P. 489.

299 Fed. 705, affirmed.

APPEAL from a decree of the Circuit Court of Appeals which affirmed a decree of the District Court (295 Fed. 331) in favor of the Guaranty Company in its suit to require the Oregon Superintendent of Banks to pay first, out of the assets of an insolvent bank, a debt to the United States which had been assigned to the plaintiff.

*Mr. J. P. Kavanaugh,* with whom *Mr. Jay Bowerman* was on the brief, for appellant.

The bank was not insolvent within the intention of § 3466 of the Revised Statutes. *United States* v. *Hooe,* 3 Cr. 72; *Conard* v. *Atlantic Ins. Co.,* 1 Pet. 386; *Beaston* v. *The Farmers' Bank of Delaware,* 12 Pet. 102; *United States* v. *Oklahoma,* 261 U. S. 253; *Strain* v. *U. S. Fidelity & Guaranty Co.,* 292 Fed. 694; *United States Fidelity & Guaranty Co.* v. *Strain,* 264 U. S. 570. A debtor is not insolvent within the sense of the statute unless he has taken some action which divested him of all his property and invested title in his assignee. The authorities reduce the controversy in this suit to this single point: Whether the resolution of the board of directors placing the affairs and assets of the bank under the control of the Superintendent of Banks, takes this case out of the established rule. The only difference between this suit and *United States Fidelity & Guaranty Co.* v. *Strain* is, that there the official took possession on his own initiative, and here he did it pursuant to the resolution of the board of directors. Unless that resolution, under the laws of Oregon, divested the bank of its property and invested the Superintendent with title, there is no right of priority. The resolution did not divest the bank of its property. Gen.

Laws Oreg. 1911, c. 171; 1913, c. 357; Tit. XXXV, §§ 6221, 6222, 6223.

The laws of Oregon prescribe the manner in which an assignment for the benefit of creditors shall be made. Oregon Laws, § 10,319; Gen. Laws 1885, p. 75, § 1. That the title to the property is not conveyed to the Superintendent of Banks, by either mode of transfer of possession and control, and that it remains in the bank until it is transferred to purchasers from time to time at sales authorized by the court in the liquidation proceedings, is established conclusively by the Supreme Court of Oregon in this case and *United States Fidelity & Guaranty Co.* v. *Bramwell,* 108 Ore. 261. *United States* v. *Oklahoma,* 261 U. S. 253.

An act of bankruptcy must divest title in order to support a priority. *Beaston* v. *The Farmers' Bank of Delaware,* 12 Pet. 102; *Conard* v. *Nicoll,* 4 Pet. 291; *Prince* v. *Bartlett,* 9 Cr. 430; *United States Fidelity & Guaranty Co.* v. *Bramwell,* 108 Ore. 287; *Davis* v. *Pringle,* 268 U. S. 315.

*Messrs. Roscoe C. Nelson* and *C. B. Ames,* with whom *Messrs. Joseph A. McCullough, Ben C. Dey, Alfred A. Hampson,* and *George L. Buland* were on the brief, for appellee.

*Mr. M. W. McKenzie* submitted a brief as *amicus curiae,* by special leave of Court.

Mr. JUSTICE BUTLER delivered the opinion of the Court.

January 28, 1922, the superintendent of the Klamath Indian Reservation had on deposit with the First State and Savings Bank of Klamath Falls, Oregon, $96,000, Indian moneys, individual and tribal. The bank had given a bond to the United States, with appellee as surety, to secure the payment of the deposit. It was insolvent

and, on that day, suspended payment. Because of its condition, the board of directors passed a resolution giving full control of its affairs to appellant. Pursuant to the laws of the State, he took possession and control of its property and business for the purpose of liquidation. Appellee paid the amount of the deposit to the superintendent of the reservation, and received from the United States an assignment of its claim against the bank; and appellee has the priority, if any, that belonged to the United States. R. S. § 3468. It claimed that, under R. S. § 3466, it should be paid in full out of the bank's assets prior to any payment on account of unsecured or unpreferred claims. Appellant denied priority, but allowed the claim as one not preferred. Appellee brought this suit in the District Court of Oregon to enforce priority. The decree went in its favor (295 Fed. 331); and was affirmed by the Circuit Court of Appeals. 299 Fed. 705. The case is here on appeal. § 241, Judicial Code.

Section 3466 provides: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 3467 provides: "Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to

the United States, or for so much thereof as may remain due and unpaid."

It was admitted that the total value of the bank's assets was less than its debts, and that it was insolvent. § 6221, Oregon Laws. National Bankruptcy Act of July 1, 1898, c. 541, § 1, 30 Stat. 544. The lower courts rightly held that the amount owed by the bank on account of the deposit in question was a debt due to the United States.

Appellee is entitled to priority if, within the meaning of § 3466, the bank made a voluntary assignment of its property or committed an act of bankruptcy.

That section is to be liberally construed. In *Beaston* v. *Farmers' Bank*, 12 Pet. 102, Mr. Justice McKinley, speaking for the Court, said (p. 134): "All debtors to the United States, whatever their character, and by whatever mode bound, may be fairly included within the language used . . . And it is manifest, that congress intended to give priority of payment to the United States over all other creditors, in the cases stated therein. It, therefore, lies upon those who claim exemption from the operation of the statute, to show that they are not within its provisions. . . . As this statute has reference to the public good it ought to be liberally construed. *United States* v. *The State Bank of North Carolina*, 6 Pet. 29. As this question has been fully decided by this court, other authorities need not be cited." The Bankruptcy Act does not give the United States priority as to debts, but that Act does not apply to banks; and there has been no Act of Congress indicating any change of purpose as to debts due from them to the United States. Cf. *Davis* v. *Pringle*, 268 U. S. 315, 317, 318; *Sloan Shipyards* v. *United States Fleet Corporation*, 258 U. S. 549, 574; *Guarantee Co.* v. *Title Guaranty Co.*, 224 U. S. 152, 158. There exists now the same reasons for a liberal construction of the priority act as when the rule was laid down.

The Act applies to all debts due from deceased debtors whenever their estates are insufficient to pay all cred-

itors, and extends to all debts due from insolvent living
debtors when their insolvency is shown in any of the ways
stated in § 3466. The decisions of this court show that no
lien is created by the statute; that priority does not at-
tach while the debtor continues the owner and in posses-
sion of the property; that no evidence can be received of
the insolvency of the debtor until he has been divested
of his property in one of the modes stated; and that,
" whenever he is thus divested of his property, the person
who becomes invested with the title, is thereby made a
trustee for the United States, and is bound to pay their
debt first out of the proceeds of the debtor's property."
*Beaston* v. *Farmers' Bank, supra,* 133, and cases cited;
*United States* v. *Oklahoma,* 261 U. S. 253, 259.

Appellant, emphasizing the view that the priority act
does not apply unless insolvency is manifested in one of
the modes there indicated, contends that the resolution of
the board of directors was not a voluntary assignment and
did not divest the bank of the title; that, as the Bank-
ruptcy Act does not apply to banks, there was no act of
bankruptcy committed; that, under the state law, title
remains in the bank after the superintendent takes pos-
session and until he disposes of the property in the course
of liquidation. And to support the last contention, he
cites *United States F. & G. Co.* v. *Bramwell,* 108 Ore. 261,
287. The question in that case was whether the State, as
depositor in an insolvent bank taken over by the super-
intendent of banks, was entitled to priority as a sovereign
right. The court held that it was; and that its right was
not defeated by the taking of the property by an ad-
ministrative officer of the State before the State asserted
its claim for priority; and that the bank's title was not
divested until the assets were sold in the course of liqui-
dation.

The specified ways in which insolvency may be mani-
fested include all cases in which an insolvent debtor makes

an assignment of his property; there is no exception, and no regard is had to the purpose or manner of the assignment; and they include all cases in which an act of bankruptcy is committed under the laws of a State or under a national bankruptcy law. *Conard* v. *Nicoll,* 4 Pet. 291, 307, 308; *United States* v. *Oklahoma, supra,* 262. The priority act does not expressly require that the insolvent debtor should be " divested " or that the person on whom is imposed the duty to pay the United States first shall become " invested " with the title. Appellant, arguing that such transfer of title is necessary, stresses general statements to that effect from opinions of this court. See *United States* v. *Hooe,* 3 Cranch, 73, 91; *Conard* v. *Atlantic Insurance Co.,* 1 Pet. 386, 439; *Beaston* v. *Farmers' Bank, supra,* 133, 136; *United States* v. *Oklahoma, supra,* 259. None involved the legal effect of acts similar to those presented here. It is a rule of universal application that general expressions used in a court's opinion are to be taken in connection with the case under consideration. *Cohens* v. *Virginia,* 6 Wheat. 264, 399. The language on which appellant relies was properly used in respect of the matters presented for decision in the cases cited by him. But, when the passages are read in the light of the facts considered and questions decided, they do not establish that the things done in this case did not in substance and effect amount to a voluntary assignment or to an act of bankruptcy.

Section 3a (4) of the Bankruptcy Act, as amended February 5, 1903, c. 487, 32 Stat. 797, provides: "Acts of bankruptcy by a person shall consist of his having . . . (4) made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a State, of a Territory, or of the United States." The fact that banks are not subject to that Act

is of no moment. The reference to an act of bankruptcy
in § 3466 is general, and is for the purpose of defining
one of the ways in which the debtor's insolvency may be
manifested. The priority given does not depend on any
proceeding under the bankruptcy laws of state or nation.
There is nothing in the language of the section, and no
reason has been suggested, to indicate a purpose to give
priority in the case of a debt due the United States from
a debtor subject to the Bankruptcy Act and to deny
priority, under like circumstances, when the debt is due
from an insolvent bank or other debtor to whom the Act
does not apply. The specification in § 3466 of the ways
insolvency may be manifested is aided by the designa-
tion in § 3467 of the persons made answerable for failure
to pay the United States first from the inadequate estates
of deceased debtors or from the insolvent estates of living
debtors. The persons held are "every executor, adminis-
trator, or assignee, or *other person.*" The generality of
the language is significant. Taken together, these sections
mean that a debt due the United States is required first
to be satisfied when the possession and control of the
estate of the insolvent is given to any person charged with
the duty of applying it to the payment of the debts of
the insolvent, as the rights and priorities of creditors may
be made to appear.*

The statutes of the State (§§ 6220–6223) provide for the
handing over of the property of insolvent banks to the
state superintendent of banks to be by him administered
and disposed of for the benefit of creditors. By the reso-
lution of the directors in this case, the bank was wholly
divested of the possession and control of its property and

* Cf. *Davis* v. *Pullen*, 277 Fed. 650; *Equitable Trust Co.* v. *Con-
necticut Brass & Mfg. Corp.*, 290 Fed. 712, 723; *Davis* v. *Miller-
Link Lumber Co.*, 296 Fed. 649; *Bramwell* v. *United States F. &
G. Co.* (this case below), 299 Fed. 705; *Davis* v. *Michigan Trust
Co.*, 2 Fed. (2d) 194; *Liberty Mutual Insurance Co.* v. *Johnson
Shipyards Corp.*, 6 Fed. (2d) 752.

business; and the exclusive possession and control of them passed to appellant for the purpose of liquidating the debts of the bank. And, under the state law, when he took possession of its assets, liens thereon, amounting in all to more than the value of the property, attached in favor of the depositors. § 6220(h). *Upham* v. *Bramwell,* 105 Ore. 597, 606–609, 613. He was empowered, and it became his duty, to collect all debts and claims belonging to the bank, to sell its property under the direction of the court, and to execute and deliver to purchasers deeds and other instruments to evidence the passing of title to them; and, if necessary to pay the bank's debts, he was authorized to enforce the individual liability, if any, of the stockholders. And it was his duty, out of the estate, to pay expenses, and from time to time, as directed by the court, to apply the funds remaining in his hands to the payment of the bank's creditors according to their rights and priorities. *United States F. & G. Co.* v. *Bramwell, supra,* 288. After 60 days had elapsed the bank could not regain the property. § 6223(c). The state law excludes all other methods for the liquidation of the debts of insolvent banks. Appellant's duties were in substance the same as those of a trustee having the legal title of property for the purpose of converting it into money to be paid over to specified persons. The state law required him to perform the functions of an assignee, receiver or trustee for the liquidation of the debts of an insolvent. See *Sargent* v. *American Bank and Trust Co.,* 80 Ore. 16, 26. Appellant had a power that for present purposes had the same effect as a title, and that is enough.

The effect of the resolution of the bank directors is the same as if it expressly granted and imposed upon appellant all the powers and duties in respect of the bank's property and the liquidation of its debts that are specified in the state law. The resolution authorized and was followed by the handing over of the possession and control

of all the bank's property to be converted into money to
pay the bank's debts. The act of the directors made the
bank's insolvency notorious. The established rule of lib-
eral construction requires that the priority act be applied
having regard to the public good it was intended to ad-
vance. Its application is not to be narrowly restricted to
the cases within the literal and technical meaning of the
words used. The things done in this case are not dif-
ferent in their substance from the things specified as the
ways in which insolvency is required to be made manifest.
It must be held that, within the meaning of the priority
act, the bank made a voluntary assignment of its prop-
erty; and that, because of the bank's insolvency, a trus-
tee was put in charge of its property under a state law
within the meaning of the Bankruptcy Act.

*Decree affirmed.*