In the Matter of **AIRPORT MACHINING CORPORATION, Parent Debtor corporation and its Subsidiaries, et al., Debtors.**

**No. 5377.**

United States District Court,
W. D. Tennessee, E. D.

Dec. 5, 1973.

Edward P. Russell, Jr., Memphis, Tenn., for Union Planters Bank.

Carl H. Langschmidt, Jr., Memphis, Tenn., for Aetna Business Credit, Inc.

James E. Irion, Memphis, Tenn., for Texas Foundry.

Bruce S. Kramer, Memphis, Tenn., for Mayer Myers Paper Co. and T. I. Steel (USA), Inc.

John Van den Bosch, Jr., Jackson, Tenn. (original debtor) later, for Assoc. Foundaries of Tennessee.

Robert A. Udelsohn, Memphis, Tenn., for petitioning creditors.

C. W. Miles, III, James M. Glasgow, Union City, Tenn., for wage earners.

William R. Neese, Paris, Tenn., for Marion Yarbrough (minor stockholder).

George O. Benton, Jackson, Tenn., for Jefferson Federal Savings & Loan Assn. of Birmingham.

John R. Moss, Jackson, Tenn., for Bank of Huntsville.

W. J. Stricklin, Union City, Tenn., J. T. White, Atlanta, Ga., for bankrupt.

Glen Reid, Asst. U. S. Atty., Memphis, Tenn., for U. S. Attorney.

H. T. Brundige, Martin, Tenn., for Bank of Martin.

## ORDER ON PRIORITY OF RIGHTS

WELLFORD, District Judge.

The United States through the District United States Attorney has filed very substantial claims in this cause against the debtor complex for (1) taxes (Internal Revenue Service), (2) excess profits (Renegotiation Board), (3) damages and excess costs (Department of Defense) and (4) damages for alleged breach of contract (Department of Labor). The United States has asserted priority for all of the claims except (4) those of the Department of Labor before claims of numerous other creditors, secured and unsecured, are to be paid pursuant to a final plan of reorganization. Certain secured creditors claiming prior recorded security or mortgage interests contest these assertions of priority by the Federal Government on behalf of its several interested creditor agencies. The Referee and Special Master, William B. Leffler, has previously made findings of fact and conclusions of law, the effect of which is to recommend that certain secured creditors be declared to have priority over federal tax liens.[1]

The United States has filed objections to the Special Master's findings, conclusions and recommendation to the extent they fail to recognize the priorities of the United States pursuant to 31 U.S.C. § 191 in the event a plan of reorganization is approved under provisions of Chapter 10 of the Bankruptcy Act with respect to this debtor complex, and under 11 U.S.C. § 599 with respect to payment of tax claims. These proceedings were filed with a view to reorganization of Airport Machining Corporation, the parent debtor corporation (hereinafter referred to as AMC) and its subsidiaries. The immediate aim of the creditors and the stockholders of this Tennessee corporate complex was to effect a continuation of operations of a welding and machine shop to complete performance of a substantial government contract for the United States Department of Defense. In the long range, the objective of this Chapter 10 proceeding is to revitalize AMC financially to enable it to meet its debts and obligations, and to permit it to function profitably in the future.

Already, certain wage claimants and secured mortgage creditors have been paid all or major portions of their claims by reason of court approved sale

1. Reference is made to these findings and conclusions. This Court interprets the Special Master's recommendation to be that certain banks and finance companies, as well as a savings and loan association and insurance company would or might enjoy priority over the United States.

of AMC subsidiary mortgaged properties not necessary to the continued and effective operation of AMC's major business, its machine shop.

On November 9, 1973, at or about the same time that the government filed objections, AMC was found to be insolvent. Bankruptcy matters are among those committed specifically to the U. S. Congress under the United States Constitution.[2] The basic statute relied upon, R.S. § 3466 (31 U.S.C. § 191) was adopted in 1797[3] and provides:

> "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."[4]

That case refers to 31 U.S.C. § 191 as establishing "government priorities on *any* debts owed by an insolvent debtor to the United States" 379 U.S. 334, 85 S. Ct. 427, 430, 13 L.Ed.2d 315. (Emphasis ours). The priority afforded under this old statute in favor of the United States applies even against "the holder of a general lien on all the taxpayer's property" (such as a municipality) where the taxpayer debtor is insolvent, and even if under state law such general lien "has substantially the same effect as would be given the judgment of a

court of record." United States v. Gilbert Associates, 345 U.S. 361, 364, 367, 73 S.Ct. 701, 705, 97 L.Ed. 1071 (1953).

Unless a secured creditor has with "specificity" required that a lien be attached to an insolvent debtor's property by reducing it effectually to possession, such creditor may not overcome the priority effect of this statute. United States v. Gilbert Associates, 345 U.S. 361, 366, 73 S.Ct. 701, 97 L.Ed. 1071 (1953). Dissenting Justice Frankfurter observed in that decision the Court's reluctance for almost a century and a half "to decide the issues that may arise under § 3466 of the Revised Statutes." 345 U.S. at 367, 73 S.Ct. at 705. The statute (Sec. 3466) "applies to all the insolvent's debts to the Government, whether or not arising from taxes, and whether or not secured by a lien." United States v. Vermont, 377 U.S. 351, 357, 84 S.Ct. 1267, 1270, 12 L.Ed.2d 730 (1964). *See also* United States v. Anderson, 334 F.2d 111 (5th Cir. 1964) to this same effect.

Bankruptcy laws were first enacted by the Congress under its constitutional prerogatives in 1800. That first act, Sec. 62, specified:

> "[N]othing contained in this law shall, in any manner, effect the right of preference to prior satisfaction of debts due the United States as secured or provided by any law heretofore passed."

Clearly then, 31 U.S.C. § 191 (R.S. § 3466), a law enacted prior to the bankruptcy laws, was not intended by Congress at the outset to be subordinated or adversely effected by Bankruptcy laws and rights of other creditors under those laws. Likewise, Chapter 10 proceedings, which more nearly resemble equity re-

---

2. Article 1, Sec. 8 provides (in part): "The Congress shall have Power . . . to establish . . . uniforms Laws on the subject of Bankruptcies throughout the United States."

3. The predecessor of Sec. 191 first appeared in 1789 in an act establishing customs duties (1 Stat. 29, 42).

4. "Debts due the United States" as used in the statute include taxes. Price v. United States, 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373 (1926). Likewise, money due the United States as a result of termination of executory contracts on a War Department installation are "debts" within the meaning of this section. United States v. King, 379 U. S. 329, 85 S.Ct. 427, 13 L.Ed.2d 315 (1964).

ceiverships than they do conventional bankruptcy causes, were not intended to subordinate government rights to other creditors. Thus, despite the fact that Section 64 of the Bankruptcy Act (11 U.S.C. § 104) fixes priority on the payment of conventional bankruptcy claims, it is inapplicable to equity type Chapter 10 proceedings. 11 U.S.C. § 502. *See* United States v. Anderson, *supra*, 334 F.2d at 114–117. The government incidentally, concedes in its memorandum that Chapters 1 through 7 of the Bankruptcy Act, in contradistinction to Chapter 10, would not apply so as to require the claims of the United States to be paid first because of the effect of Section 64 of said Act. Nevertheless, 11 U.S.C. § 599 is not inconsistent with R. S. § 3466; it applies, however, both to solvent and insolvent debtors whereas R.S. § 3466 applies only to insolvent situations. The Supreme Court has consistently construed R.S. § 3466 liberally,[5] and has stated that "[o]nly the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of § 3466." United States v. Emory, 314 U.S. 423, 433, 62 S.Ct. 317, 323, 86 L.Ed. 315 (1941).

The Supreme Court, moreover, in 1970, in United States v. Key, 397 U.S. 322, 90 S.Ct. 1049, 25 L.Ed.2d 340 recently had occasion to set out its views with respect to Chapter 10 Bankruptcies and the effect of R.S. § 3466. Among other things, it was settled:

(1) "[b]y 1926 it was established that § 3466 applied to give the United States an absolute priority for payment of debts due it from insolvent corporations in equity receivership." (p. 329, 90 S.Ct. p. 1054)

(2) "the established practice of applying § 3466 to equity receiverships, the acknowledged predecessor of the Chapter X proceeding, combined with the failure to indicate in any way an intent to alter that practice in the new statutes, supports the conclusion that Congress affirmatively meant § 3466 to apply to statutory reorganization." (p. 332, 90 S.Ct. p. 1055)

Since the statute in question "was founded upon motives of public policy in order to secure an adequate revenue to sustain the public burdens and discharge the public debts, and should be liberally construed," (citing United States v. State Bank of N. C., 6 Pet. 29, 8 L.Ed. 308 and others), the Sixth Circuit held that even an unliquidated, not yet officially or finally approved, tax claim was sufficient to be constituted a "debt" with priority within the meaning of § 3466. Viles v. Comm. Internal Revenue, 233 F.2d 376, 380 (1956). All of the claims made by the government here (except that of the Department of Labor reserved) would under that rationale be covered and entitled to priority under § 3466 unless an exception were established by other creditors. The Fifth Circuit in two cases has recognized such an exception to the priority position of the United States in cases where there were perfected, specific, fully choate liens claimed by other creditors sufficient to deprive the debtor effectually of possession and control of the property in question. United States v. Atlantic Municipal Corp., 212 F.2d 709 (1954) and Exchange Bank v. Tubbs Manufacturing Co., 246 F.2d 141 (1957) cert. denied 355 U.S. 868, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957). But see United States v. Anderson, *supra,* a 1964 case, which casts some doubt upon these prior holdings. See also to the contrary, W. T. Jones v. Foodco Realty, 318 F.2d 881 (4th Cir. 1963).

The Sixth Circuit very recently considered the effect of United States v. Key, *supra*, in In Re Tenn. Central Railway Co., 463 F.2d 73 (1972). The Court

---

5. *See, e. g.*, Bramwell v. United States Fidelity Co., 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368 (1926); Small Business Administration v. McClellan, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960); and United States v. Remund, 330 U.S. 539, 67 S.Ct. 891, 91 L. Ed. 1082 (1947)—wherein the claim of the Farm Credit Administration was construed to be a "debt due the U. S." under that statute.

held that R.F.C. claims, like tax claims, were "debts" within the meaning of § 3466, even though originally excluded by the statute creating R.F.C., 463 F.2d at 81. The Court in *Tenn. Central Railway* further held that only "specific and perfected liens," or choate liens, "the subject of proceedings designed to divest the debtor of either title or possession of its property prior to bankruptcy" could establish or achieve priority over government claims. 463 F.2d at 80, 81. *See* United States v. Waddill, Holland & Flinn, 323 U.S. 353, 65 S.Ct. 304, 89 L. Ed. 294 (1945) and United States v. Gilbert Associates, *supra.* Furthermore, it was held that "federal and not state law controls both in determining priority and in determining whether the lien relied upon is 'choate' or 'inchoate'." 463 F.2d at 80. Thus, $5.5 million government claims were held to have priority over approximately $3 million other creditor claims, including taxes due to local governments and other debts.

Judge Weick, dissenting in *Tenn. Central Railway, supra,* supported then District Judge William Miller's decision against priority of the United States Government claims in this Railroad reorganization proceeding, feeling that "[w]ithout question, the priority claims of the creditors were superior to the loan of R.F.C. . . ." 463 F.2d at 82. Perhaps the views of Judges Weick and Miller, seemingly in accord with earlier views of the Fifth Circuit, may prevail in another test case involving a Chapter 10 reorganization such as this one, but this Court is constrained to hold that the claims of the United States are prior to those of any secured creditor of AMC unless it can establish a choate, specific and perfected lien designed to divest the debtor of either title or possession of its property prior to bankruptcy. See also United States v. Davis, 247 F.Supp. 84 (E.D.Mich.1965).

"If there be, as . . . [the secured creditors] argue, overriding policy and equitable considerations which cry

for a different result, these contentions must be made before Congress for specific statutory amendments. *See* Plumb, The Federal Priority in Insolvency: Proposals for Reform, 70 Mich.L.Rev. 1 (Nov. 1971) page 3." [6] *Tenn. Central Railway,* 463 F.2d at 80.

For the reasons set out, the matter is remanded to the Special Master for reconsideration and findings as to whether any secured creditors contending against the strong priority of the United States under § 3466 have a choate, specific and perfected lien as herein defined.

---

6. None, however, were specified to be mortgage security claims.