**In the Matter of the NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY.**

No. B 76–182.

United States District Court, D. New Jersey.

April 9, 1981.

Ravin, Katchen & Greenberg by Howard S. Greenberg and Jack M. Zackin, Newark, N. J., for trustee.

Crummy, DelDeo, Dolan & Purcell by Michael R. Griffinger and Paul R. De Filippo, Newark, N. J., for the indentured trustees Gateway 1.

Lum, Biunno & Tompkins by Edward R. McMahon and William J. McGee, Newark, N. J., for debtor.

James R. Zazzali, Atty. Gen., State of New Jersey by Joseph L. Yannotti, Deputy Atty. Gen., Trenton, N. J., Highsaw, Mahoney & Friedman by John O'B. Clarke, Jr., Washington, D. C., for the Railway Labor Executives Assoc.

Kelley, Drye & Warren by Robert Chender, New York City, for Manufacturers Hanover.

Fell, Spalding, Goff & Rubin by William P. Quinn, Philadelphia, Pa., for Delaware Otsego Corp.

WHIPPLE, Senior District Judge.

This matter is before the Court for a ruling on approval of the First and Second Amended Plans of Liquidation ("the Plan") submitted by the Trustee of the New York, Susquehanna and Western Railroad Co. The Plan was certified to this Court by the Interstate Commerce Commission (ICC) on December 27, 1980.

On March 24, 1981 the Court conducted a hearing on whether to approve the Plan pursuant to a Notice of Hearing dated January 13, 1981 directed to all creditors, shareholders, indentured trustees and other interested parties.

Upon a review of the record before this Court, as well as the record before the ICC, the Court has concluded that the Plan should be approved. In accordance with the dictates of Section 77(e) of the Bankruptcy Act, 11 U.S.C. § 205(e), this Opinion is issued to set forth the reasons for the Court's conclusion.

The Notice of Hearing directed that objections to the Plan be filed with the Court by March 17, 1981. Three objections were filed in accordance with the Notice, and counsel for two of the objecting parties were present at the hearing and stated their objections on the record. In summary the objections were as follows:

1. The Railway Labor Executives' Association ("RLEA") objected because of the absence of labor protective provisions in the Plan;

2. The New Jersey Department of the Treasury objected basically because of the distinction between classes 2 and 3 in the Plan, and for other reasons relating to definitions within the Plan; and

3. A former employee of the debtor, Harry Downing, submitted a letter to the Court complaining that a release he gave the Trustee was the product of duress and harassment. Mr. Downing did not appear at the hearing.

The Court finds as follows with respect to the objections:

1. RLEA's objection has previously been rejected by this Court in an Opinion dated November 28, 1980, which is presently the subject of an appeal before the Third Circuit Court of Appeals. No reason has been presented which would militate in favor of

any modification of the November 28, 1980 decision.

2. The New Jersey Department of the Treasury's objections have been dealt with by the I.C.C. in its decision and Order. I find the I.C.C.'s treatment of those objections by the State to be valid and correct.

3. Mr. Downing's objection does not relate to any of the criteria which guides this Court in its decision whether to approve the Plan and accordingly need be addressed no further in this context.

■ Turning next to a consideration of the statutory criteria governing this Court's Ruling on the Plan, it must be noted that pursuant to Bankruptcy Rule 8–304, this Court is to render a decision based primarily on the record before the I.C.C. The Advisory Committee's Note to Rule 8–304 suggests:

> Approval of the Plan by the Court involves review of the Commission's factual findings and legal conclusions ... A de novo hearing before the Court is not contemplated. However, evidence relating to changed circumstances and compensation and reimbursement for necessary expenses within the limit fixed by the Commission may be reviewed at the approval hearing.

Advisory Committee Notes to Rule 8–304, Collier Pamphlet Edition, Bankruptcy Rules and Official Forms (Moller and King, Eds., 1979).

■ Where the I.C.C. has followed the proper legal standards, and there is substantial evidence to support its determination, those findings must be accepted by the Court. 5 Collier, *Bankruptcy*, ¶ 77.14, at 574 (14th Ed., 1978).

In determining whether to approve a Plan certified to it by the I.C.C., this Court is governed by Section 77(e), which provides in relevant part:

> The Judge shall approve the plan if satisfied that: (1) It complies with the provisions of subsection (b) of this section, is fair and equitable, affords due recognition to the rights of each class of creditors and stockholders, does not dis-

criminate unfairly in favor of any class of creditors or stockholders, and will conform to the requirements of the law of the land regarding the participation of the various classes of creditors and stockholders; (2) the approximate amounts to be paid by the debtor, or by a corporation or corporations acquiring the debtor's assets, for expenses and fees incident to the reorganization, have been fully disclosed so far as they can be ascertained at the date of such hearing, are reasonable, are within such maximum limits as are fixed by the Commission, and are within such maximum limits to be subject to the approval of the Judge; (3) The plan provides for the payment of all costs of administration and all other allowances made or to be made by the Judge, except that allowances provides for in subsection (c), paragraph (12) of this section may be paid in securities provided for in the plan if those entitled thereto will accept such payment, and the Judge is hereby given power to approve the same.

■ I turn first to the question of whether the Plan complies with Section 77(b). That section sets forth three provisions which a Plan must contain. Under the statute, a Plan must: (1) include provisions modifying or altering the rights of creditors generally or any class of them; (2) provide for fixed charges in such amount that future earnings will be sufficient to cover same; and (3) provide adequate means for its execution.

■ The I.C.C. found that the Plan complies with Section 77(b), and I agree. The sale of all of the debtor's assets, free and clear of liens, with liens to attach to the proceeds, certainly affects creditors generally, by removing certain identifiable property from the reach of process, or from specific liens and encumbrances. Moreover, as detailed below, the rights of Class 6(c) and all classes junior thereto, are significantly altered.

■ Secondly, the requirement that the Plan provide for payment of "fixed charges" is inapplicable to the Plan here

being considered, since the Plan contemplates liquidation of the debtor's assets.

■ Finally, with respect to execution of the Plan, the Court concludes that the sale of the debtor's assets to a subsidiary of the Delaware Otsego Corporation, as contemplated in the Plan, constitutes adequate means for the Plan's execution. Sale of the debtor's assets is specifically authorized by Section 77(b)(5) as one of the means for execution of a Plan. The only limitation on the power to sell is that the sale be "at not less than a fair upset price." In this connection, I find that the liquidation value of $3,022,000 which appears in the Gross Appraisal, previously made a part of the record in these proceedings, would have constituted a fair upset price for the debtor's assets. The $5,000,000 to be received from the subsidiary of Delaware Otsego is well in excess of that figure and compares favorably with the value of $5,000,000 ascribed to the debtor as a going concern by the Gross Appraisal.

It appears to the Court that the Trustee and the Purchaser are proceeding with all deliberate speed toward a closing on the asset sale contract. That contract, of course, arose as the result of spirited bidding among three offerors for the debtor's assets. After numerous hearings and written submissions, this Court ruled in May of 1980 that Delaware Otsego's offer was fair, and was the highest and best offer for the assets of this estate.

The I.C.C., in a supplemental decision dated February 24, 1981 has authorized Delaware Otsego's subsidiary, The New York, Susquehanna & Western Railway Corp. to issue a bond to finance the payment of the purchase price to the Trustee. The facts presented thus clearly establish that there are adequate means for execution of the Plan.

Finally, Section 77(e)(3) is satisfied, in that all costs of administration and other allowances shall be paid, pursuant to the distributive provisions of the Plan. For all the foregoing reasons, the Plan is approved,

and procedures leading to confirmation shall commence.

The next issue before me is a determination of which classes of creditors and stockholders need vote on acceptance of the Plan. In essence, Section 77(e) provides that solicitation of acceptances from a class of creditors or stockholders is only necessary if the claims of such class have "value" and would be "adversely and materially affected" by the Plan.

At the hearing on Plan approval, the Trustee presented the testimony of Jerry Beasman, Comptroller of the Delaware Otsego Corporation. Mr. Beasman's testimony, and Exhibit T–2 marked in evidence at the hearing, establish that, based upon the books and records of the Railroad as of June 30, 1980, the liabilities to creditors in classes 1 through 5 (excluding class 2 administration creditors) total approximately $2,720,000. Classes 6(a) (Series A First and Consolidated Mortgage 4% Bonds) and 6(b) (Terminal First Mortgage 4% Bonds), including accrued interest to date, total approximately $1,014,300. Thus, there is a total due to classes 1 through 6(b) (excluding class 2), of approximately $3,734,300. According to the Railroad's books and records, the total claim of class 6(c) (General Mortgage 4½% Income Bonds) is $4,053,102, including accrued interest. Thus, it appears that the total dollar value of claims in classes 1 through 6(c) (excluding allowances to class 2) is $7,787,402.[1]

Mr. Beasman testified that as of June 30, 1980, the Trustee's assets consist of the following:

1. Cash - $1,776,969.
2. Accounts Receivable – $485,684.
3. Balance due from Delaware Otsego – $4,900,000.

Total – $7,162,653.

Mr. Beasman testified that as of March 24, 1981, the estimated assets of the Trustee were as follows:

1. Cash – $2,092,595.
2. Miscellaneous Accounts Receivable – (Approximate) – $200,000.
3. Balance due from Delaware Otsego – $4,450,000.

Total – $6,742,595.

---

1. Counsel for the Trustee advised the Court that the sum of claims filed is slightly greater than the liabilities as reflected on the debtor's

books. The difference in claims versus book liability is not large enough to alter the conclusions reached herein.

The proof with respect to the cash value of assets available for distribution reveals that classes 1 through 6(b), (including class 2) will receive cash payments for the full value of their claims. Furthermore, the members of class 6(c) will receive less than 100% of the dollar value of their claims. This would appear to be the case, even if no monies were allocated to class 2. Thus, it appears that the estate will be totally exhausted by only a partial distribution to General Mortgage Income bondholders.

The above analysis reveals that the claims of all classes junior to 6(c) have no value, since distribution is to proceed in accordance with the absolute priority rule. And, *a priori*, the debtor is unquestionably insolvent, as the value of its assets is far less than even a portion of its total liabilities.

Submission of the Plan to a class of creditors for voting is not required, according to Section 77(e) (¶ 2)(¶ 4) "if the Plan provides for the payment in cash to such class . . . of an amount not less than the value of their claims" or if the interest of such class has "no value". Likewise, according to the same statute, submission of the Plan to stockholders for voting is not required if the debtor is insolvent.

Here it appears that members of classes 1 through 6(b) will be paid cash in an amount equal to their claims. Members of class 6(c), on the other hand, will be paid less than the full value of their claims. The claims of members of classes 6(d) and all those junior thereto have no value, as all assets will be depleted by distribution to the Income bondholders. Therefore, the only class of creditors which is materially and adversely affected by the Plan, and who need vote thereon, is the class of holders of the Series A General Mortgage Income Bonds. Of course, the clear insolvency of the debtor makes submission of the Plan to stockholders likewise unnecessary.

In sum, this Court finds that the Plan complies with Sections 77(b) and (e) of the Bankruptcy Act, is fair and equitable, and should be approved as certified to the Court by the I.C.C. Only the members of class 6(c) are materially affected by the Plan, and entitled to vote thereon. The Trustee shall therefore within twenty (20) days of the entry of an Order conforming to this Opinion, mail to each member of the affected class, a copy of this Opinion and the accompanying Order, and the Interstate Commerce Commission decision and Order dated December 22, 1980.[2] Also included in that mailing to voting creditors shall be a ballot and a notice that the creditors' acceptance or rejection of the Plan must be received by the Trustee within sixty (60) days of the date of said Notice, in order for that vote to be counted.

The Trustee shall certify the results of the voting on the Plan to this Court and the I.C.C. within fifteen (15) days after expiration of the sixty (60) day voting period. Thereafter, the Court shall schedule a hearing on confirmation. It is anticipated that all parties who intend to apply for allowances as class 2 administrative creditors shall do so no later than the expiration of the voting period. Of course, the I.C.C. shall be included in the process of granting administrative allowances, for the purpose of determining maximum limits.

The counsel for the Trustee shall submit an appropriate order within five (5) days of receipt of this opinion.

---

**2.** The Plan, which accompanied the Notice of Hearing has already been provided to all parties in interest.