In the Matter of NEW YORK, SUSQUE-
HANNA and WESTERN RAILROAD
CO., Debtor.

Bankruptcy No. B 76–182.

United States District Court,
D. New Jersey.

Dec. 29, 1981.

See also Bkrtcy., 11 B.R. 1005.

Howard S. Greenberg, Ravin, Katchen & Greenberg, Newark, N.J., for trustee.

Bernard Cedarbaum, Carter, Ledyard & Milburn, New York City, for Indentured Trustee U.S. Trust Co.

Robert M. Maidman, New York City, for Series A Bondholders.

William P. Quinn, Fell, Spalding, Goff & Rubin, Philadelphia, Pa., for Delaware Otsego Corp.

Donald Lampson, Elkind & Lampson, New York City, for United Trans. Union.

Charles A. Spitulnik, Highsaw, Mahoney & Friedman, Washington, D.C., Marc N.

Isenberg, Osterweil, Wind & Loccke, Edgewater, N.J., for Railway Labor Executives' Ass'n.

Thomas A. Woodley, Muholland, Hickey, Lyman, McCormick, Fisher & Hickey, Washington, D.C., for Ry. Emp. Dept. IAM.

Michael R. Griffinger, Crummy, Del Deo, Dolan & Purcell, Newark, N.J., William C. Struyk, Cravath, Swain & More, New York City, for Chemical Bank, Indenture trustee.

Jerome A. Vogel, Jeffer, Hopkinson & Vogel, Hawthorne, N. J., for Shippers Task Force.

Edward Roberts, III, Kelley, Drye & Warren, New York City, for Indentured Trustee Manufacturer's Hanover.

William J. McGee, Lum, Biunno & Tompkins, Newark, N.J., Gary Newman, Newman & Cary, East Orange, N.J., for New York Susquehanna & Western Ry. Corp.

Lewis N. Wilson, Chatham, N.J., for County of Manis Bd. of Public Transp.

John B. Murray, Connell, Foley & Geiser, Newark, N.J., Donald F. Luke, Rogers & Wells, New York City, for Committee on Interlines.

Weisman, Celler, Speet, Modlin & Wertheimer, New York City, Special Counsel to trustee.

## OPINION

WHIPPLE, Senior District Judge.

This matter is before the Court for a ruling on final confirmation of the Second Amended Plan of Liquidation ("The Plan") submitted by the Trustee of the New York, Susquehanna and Western Railroad Co. ("The Debtor"). Having thoroughly reviewed and carefully considered the record in this matter, for the reasons set forth herein this Court hereby confirms the Plan as drawn, pursuant to § 77(e) of the former Bankruptcy Act, 11 U.S.C. § 205(e), and adjudges that it be executed forthwith.

I

On December 27, 1980 the Plan was certified to this Court by the Interstate Com-

merce Commission. Following a hearing on approval of the Plan, and pursuant to Bankruptcy Rule 8–304, by Opinion dated April 8, 1981 this Court rejected several objections to the Plan, found the Plan to be in compliance with the requirements of § 77(e) and accordingly concluded that the Plan should be approved subject to acceptance by vote of the members of the materially affected Class 6(c) creditors—holders of the Debtor's Series A General Mortgage 4½% Income Bonds. 11 B.R. 1005. On July 13, 1981 the Trustee filed with the Court a certification of acceptances and rejections by the members of the affected class which indicates that nearly 98% of the 6(c) class accept the Plan of Liquidation. Pursuant to the requirements of Bankruptcy Rule 8–307, and following proper notice issued on August 31, 1981, this Court conducted a hearing on September 10, 1981 with regard to confirmation of the Plan. No objection was raised before the Court regarding the manner or result of the submission of the Plan to the affected creditors.

Accordingly, pursuant to the criteria set forth in § 77(e), this Court finds and adjudges that the acceptances were not unlawfully procured, and that the vote for acceptance is well in excess of the statutorily required two thirds.

### II

■ Several final objections to the Plan itself have been raised.[1] Following oral argument on September 10, 1981 with regard to these objections, this Court allowed for time thereafter within which additional memoranda could be submitted. The objections are as follows:

■ 1. The United States of America is a creditor of the Debtor as a result of a Small Business Administration loan to the New York Susquehanna & Western Railroad Co. The United States objects that the Plan does not classify the deficiency portion of its secured claim ahead of the claims of general unsecured Class 8 creditors, as perhaps required by Title 31 U.S.C. § 191. *In re Tennessee Central Railway Co.*, 463 F.2d 73 (6th Cir. 1972). Although this Court recognizes the validity of the Government's argument, because the assets of the Estate are insufficient to satisfy fully even the secured creditors, the need to formally create a priority class to accomodate the unsecured balance of the Government's claim is moot. Accordingly, the Court finds this objection to be meritless and rejects it.

2. The Railway Labor Executives' Association (RLEA) again raises its continuing objection to the Plan's failure to impose certain labor protection provisions. This Court has already denied the request for such provisions, *In re N.Y.S. & W. Rail. Co.*, 504 F.Supp. 851 (D.N.J.1980), which denial was recently affirmed by the Court of Appeals for the Third Circuit, *In re N.Y.S. & W. R. Co.*, Nos. 81–1121 and 81–1929 (3d Cir. Nov. 16, 1981), which relied upon the reasons set forth in this Court's Opinion and in *In re Chicago, Rock Island & Pacific R.R.*, Nos. 80–1788, 80–2199 and 80–2286 (7th Cir. Oct. 13, 1981). The RLEA's re-

---

1. Although the Court is not required to entertain objections previously considered, *In re Minn., St. P., & S.S.M. Railway Co.*, 50 F.Supp. 748 (D.Minn.1943), I do not hesitate to comment briefly thereon. Furthermore, the Court finds just cause to reconsider the issue raised in objection # 4, *infra*. The doctrine of "law of the case" does not carry the same consequences as the rule of res judicata. While this case remains *sub judice*, the Court has a duty to apply any supervening applicable law. 1B Moore's Federal Practice ¶ 0.404[1] (1980), and cases cited therein. In addition, it has been stated that:

Under Section 77(e) of the Bankruptcy Act, a plan which has been approved by the reorganization court and has received the required favorable vote of those entitled to vote should be confirmed, *unless it is established that in the interim, circumstances have changed in such a way as to undermine the basis of the Court's earlier approval of the plan.*

*Matter of Penn Central Transportation Company*, 458 F.Supp. 1364, 1368 (E.D.Pa.1978), *aff'd*, 596 F.2d 1127 (3d Cir. 1979), *cert. denied sub nom., Schaefer v. Penn Central Corp.*, 444 U.S. 835, 100 S.Ct. 68, 62 L.Ed.2d 45 (1979) (emphasis added). Certainly, a change in governing law is sufficient change in circumstances to warrant reconsideration.

quest for modification of the Plan in this regard is therefore once again, finally denied.

3. Thomas J. Vick, a former employee of the Debtor, objects to confirmation for a number of reasons, none of which relate to the criteria which guide this Court in considering confirmation of the Plan. Therefore, Mr. Vick's objections need not be addressed in this context. The Court finds no basis upon which to grant Mr. Vick relief.[2]

■ 4. Chemical Bank, Indenture Trustee on behalf of certain bondholders of the Debtor who are classified as Class Six creditors pursuant to the Plan, argues that the Plan should be modified prior to its confirmation in light of the recently decided case of *In re The Lehigh and New England Railway Co.*, 657 F.2d 570 (3d Cir. 1981) (hereinafter "Lehigh"). Chemical Bank suggests that the Interline Creditors in Class One be reclassified and assigned a lower priority than the secured bondholders with respect to their pre-petition freight claims. For the reasons stated below the Court rejects this argument and reiterates its Order of November 27, 1978 directing that such pre-reorganization interline freight monies are held in trust by the Debtor for the Interlines, and are therefore entitled to be paid—in this case, in full— ahead of other obligations of the Estate.

### A.

The issue posed is whether the facts of the instant case bring it within the holding of *Lehigh*, thus restricting the reach of the Interlines as trust beneficiary claimants to trust funds in the railroad's general account at its low ebb, the time of filing for reorganization, or whether, on the other hand, the earlier decision of the Third Circuit sitting *en banc* in *In re Penn Central Transp. Co.*, 486 F.2d 519 (3d Cir. 1973), *cert. denied, Chicago and North Western Transp. Co. v.*

*Baker*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974) (the "Trust Fund Case"), requires that the Interlines' claims under the trust be satisfied in full from any and all assets of the Estate.

In the *Trust Fund Case*, the Third Circuit held that interline freight revenues earned by the interline railroads (Interlines) and necessarily collected on their behalf by a single railroad under the regulations established pursuant to the Interstate Commerce Act, 49 U.S.C. § 1(4), are held in trust for the Interlines. Accordingly, the trustee of a collecting railroad in reorganization must pay such trust funds to the Interlines entitled thereto, and do so without requiring the Interlines to trace the revenues into and within the railroad's general account in which they were necessarily and routinely co-mingled. *Accord In re the Ann Arbor Railroad Co.*, 623 F.2d 480 (6th Cir. 1980); *In re Central Railroad Co. of N.J.*, 412 F.Supp. 927 (D.N.J.1976), *aff'd*, 553 F.2d 12 (3d Cir. 1977).

Commenting upon the *Trust Fund Case*, in *Lehigh* the Third Circuit noted that:

[I]n concluding that Penn Central was obligated to pay any remaining balances due in its trust fund accounts to the interlines, we neither limited the assets from which the trust funds were to be paid, nor approved payment of such funds from mortgaged assets.

At 577. The Court of Appeals explained that in the *Trust Fund Case*:

... there were always sufficient general monies, as distinct from mortgaged assets, to satisfy interline claimants. Thus, ... we did not have to consider whether interline claimants would still be entitled to payment priority where, [as in *Lehigh*], all the unmortgaged assets are insufficient to satisfy their claims.

---

2. The Court, however, feels compelled to note the following: 1) that by Order of April 16, 1981 this Court authorized settlement of Mr. Vick's personal injury claim against the Debtor, 2) that counsel to the Trustee represents to the Court that the Trustee, Walter G. Scott, is complying with all state and federal require-

ments relating to the payment of taxes and payment to the Railroad Retirement Fund (transcript of proceedings, September 10, 1981, p. 10), and 3) that the balance of Mr. Vick's objections concern the labor protection issue already disposed of as noted above.

At 576. Thus, in the *Trust Fund Case* the Court did not address the problem confronted in *Lehigh* of determining the limits, if any, of the estate's assets from which trust claims may be satisfied.

In *Lehigh* the railroad had previously ceased operation and the railroad's general account, the trust fund, was completely emptied as the result of two occurrences: (1) the railroad had expended a portion of the fund to meet normal operating expenses, and (2) this Reorganization Court ordered the balance of the fund to be paid out to the Interlines on a pro rata basis. At 578, n.8. On these facts the Third Circuit applied the "dissipation of trust rule"—a principle of traditional trust law limiting the assets from which the trust claims could be paid. The Court held that:

> ... where a trustee had commingled trust funds in an account containing other funds, and the mingled fund is at any time wholly depleted, the trust fund is thereby dissipated and cannot again resume the character of trust funds even when the account is replenished.

At 578. Accordingly, the Interlines were prevented from gaining satisfaction from the "valuations proceeds" [3]—monies which bear no relation to interline revenues and which have never been co-mingled therewith.

### B.

Chemical Bank argues that the holding in *Lehigh* stands for the proposition that mortgaged assets may never be invaded to satisfy Interlines' trust claims. Chemical asserts that all assets of the Debtor, including cash, were brought within the ambit of their mortgage upon the Debtor's default. The Interlines challenge the validity of such "springing liens" in general, and of the "events of default" relied upon by Chemical to extend the lien in this particular case. ▬▬ This Court does not find Chemical Bank's interpretation of the decision in *Le-*

high to be tenable. The "valuation proceeds" in *Lehigh* were found to be beyond the reach of the trust claimants, not because they are mortgaged assets, but rather because, by the indicia discussed *infra*, they clearly are not trust funds. In fact, the Court need not even reach the argument raised by the Interlines that Chemical Bank's "spring lien" does not validly expand its mortgage, since to the extent such a "springing lien" is valid, it is nonetheless displaced by claims of superior priority such as, in this case, a claim to trust funds. *Cf. In re New York, N.H. & Hart. R.R. Co.*, 278 F.Supp. 592, 602 (D.Conn.1967), *aff'd*, 405 F.2d 50 (2d Cir. 1968), *cert. denied, Abex Corp. v. Trustees of Property of N.Y., N.H. & H.R. Co.*, 394 U.S. 999, 89 S.Ct. 1592, 22 L.Ed.2d 776 (1969); *In re Penn Cent. Transp. Co.*, 458 F.Supp. 1234, 1322, n.81 (E.D.Pa.1978). Accordingly, the proper approach, followed in the instant case, is to determine the reach of the trust rather than the extent of the mortgage. As the Appellate Court in *Lehigh* concluded, at page 582 (emphasis supplied):

> ... the principles of established and traditional trust law require that the trust fund claimants, *who are unable to identify the funds set aside for them*, may not invade a secured bondholder's interest, even when the trust fund claimant has been endowed with his status by the special considerations which this Court has recognized in the case of interline claimants.

The unmistakable inference is that, to the extent the Interlines can identify assets in the Estate as trust funds, their claims may be satisfied therefrom regardless of any lien on those funds.

### C.

Chemical Bank asserts alternatively that the substantial depletion of the New York, Susquehanna and Western's general railroad's mortgaged assets conveyed to Conrail pursuant to the Regional Rail Reorganization Act of 1973.

---

3. "Valuation proceeds" represents an anticipated award to the Lehigh and New England Railroad in its litigation against the United States, brought to recover the value of the

account at the time of filing [4] is sufficiently analogous to the complete dissipation in *Lehigh* to cut off the Interlines's claim to "replenishing" funds subsequently deposited in the general account. In support of this proposition Chemical Bank notes that in neither *Sonnenschein v. Reliance Ins. Co.*, 353 F.2d 935 (2d Cir. 1965), nor in *In re J.M. Acheson Co.*, 170 F. 427 (9th Cir. 1909)—the cases upon which *Lehigh's* application of the "dissipation of trust" rule is based— were the trust funds in question entirely dissipated. The Interlines argue, on the other hand, that in the *Trust Fund Case* considerable depletion of the Penn Central's general account at the time of filing [5] did not prevent satisfaction of the Interlines' trust claims from subsequently deposited replenishing monies.

■ The parties' attention to the relative degree of depletion of the general fund in question is undue and misleading. The important and distinguishing considerations in applying the "dissipation of trust" rule are the character and source of the replenishing funds deposited, if any, and the ability to clearly distinguish and separate dissimilar replenishing funds from trust funds—i.e., from interline revenues and monies with which they are routinely and necessarily comingled. For example, in *Acheson*, a bankrupt mingled money held by him in trust with his own funds, and paid out portions of the comingled fund toward business expenses. In holding that the trust beneficiary was entitled to recover to the full extent he could show that such funds came into the estate and enhanced its value, the Court limited such recovery by stating (as quoted also in *Lehigh*):

> We do not mean to be understood as holding that equity will grant to a cestui que trust relief against any assets in the hands of a trustee, for it will not go farther than to give a lien when the facts

are that there remain in the estate specific funds or property which have increased the assets of the estate, and which represent the proceeds of the specific property intrusted to the bankrupt. Moreover, *if there has been expenditure, and the funds are gone, and no specific property or money is found instead of the funds, it is inequitable that some other property found should be applied to pay one creditor in preference to another.* So, funds that have been dissipated or that have been used to pay other creditors or that have been spent to pay current business expenses are not recoverable, because they are gone and there is nothing remaining to be the subject of the trust.

170 F. at 430 (emphasis supplied).

Similarly, in *Sonnenschein* trust funds were commingled with other revenues and the resulting fund was substantially dissipated. The 9th Circuit in that case would not allow the trust claims to be satisfied out of accounts receivable which bore no nexus to the trust funds.

*Lehigh, Sonnenschein* and *Acheson* fall comfortably within the "dissipation of trust" rule since in each of these cases the assets sought by the trust beneficiaries were unrelated to the trust funds and were clearly identifiable as such because they were at all times segregated from the trust fund accounts. In other words, there were no replenishing monies deposited in the trust accounts which could be mistaken for trust funds. It is therefore inconsequential in *Acheson* and *Sonnenschein* that the trust funds themselves were never completely dissipated. Similarly, it was unnecessary in *Lehigh* to point to the fact of complete dissipation in order to distinguish trust funds from unrelated assets. By comparison, the monies sought by the Interlines in the *Trust Fund Case* were substantially related to the trust funds—i.e., the replenish-

4. On January 20, 1976, the date of filing for reorganization, the Debtor's general account contained $7,372.00, against which the Interlines claim over $400,000. Affidavit of Jerry Beasman, Vice-President—Finance of the Delaware Otsego Corporation (current operator of the Debtor railroad), September 23, 1981, Exhibit A.

5. At the time the Penn Central filed for reorganization, the railroad's general account contained only approximately $7,000,000, against which $20,000,000 was claimed.

ing funds were interline and general revenues generated and collected as a result of the railroad's continued operation. Also in *Trust Fund* the Penn Central's general account never neared complete depletion. In such a situation, without the identifiable break in the routine comingling of indistinguishable funds provided by complete dissipation of the account, it would be impossible to confidently separate trust funds from similar non-trust funds subsequently and routinely deposited in the same account.

■ Accordingly, to determine the limits of the trust's reach, the proper inquiry of this Court is into the relationship of the funds sought by the Interlines to pre-petition interline freight revenues, and the ability to separate any unrelated funds from pre-petition interline freight revenues and other comingled general revenues.

### D.

■ First, with regard to the estimated $2,290,000 currently in the Debtor's special funds,[6] these monies are proceeds from the sale of the railroad's property. Because these funds are entirely unrelated to the trust funds, and are segregated from the railroad's general account, they are beyond the reach of the trust claimants.

■ Secondly, the Debtor's general account has been replenished, and currently contains an estimated $610,000.[7] This Court finds that the Interlines' pre-petition freight claims properly may be satisfied from the funds currently in the general account. To the extent of provable Interlines' claims, these funds are trust funds. This finding is not based upon the fact that the general account was not completely dissipated at the time of filing. Rather, the Court concludes that the Debtor's current general cash funds are indistinguishable from, and in fact include, trust funds—i.e.,

pre-petition interline freight revenue. On the date of filing, the Debtor held accounts receivable from shipping customers for freight movement in the amount of $286,435, which accounts receivable have now been reduced to approximately $23,000.[8] Clearly, substantial pre-petition interline freight revenue has been collected by the Debtor since the time of filing and deposited in the railroad's general account. Although the extent of pre-petition interline freight claims was, of course, fixed at the time of filing, revenue earned pre-petition continued to flow into the general account after that time. Therefore, even though the balance in the Debtor's general account may have reached its low ebb on the date of filing, that date is of no consequence in determining from which funds the trust claims may be satisfied.

In accordance with the *Trust Fund Case*, monies currently on deposit in the New York Susquehanna & Western's general account—i.e., pre-petition interline freight revenue, and other general revenues of the railroad with which they were routinely and necessarily comingled—constitute a trust fund from which, as the Plan provides, the Interlines are to be paid.[9]

### III

In conclusion, the Plan of Liquidation having been duly accepted by vote of the affected class of creditors, and all objections and requests for modification having been herein denied by this Court, the Plan is hereby confirmed. Counsel for the Trustee will submit an Order in conformance with this Opinion within seven (7) days.

---

6. Affidavit of Jerry Beasman, September 23, 1981, Exhibit A.

7. Affidavit, cited in n.4, *supra*. Pre-petition interline freight claims filed as of September 23, 1981 total $414,786.00, as opposed to ledger balances of $319,188.00 in such accounts payable. *Id.*

8. *Id.*

9. Having concluded that the Interlines remain entitled to full satisfaction of their pre-petition interline freight claims, the Court need not reach the alternative possibility that the Interlines' claims may be classified ahead of the bondholders as "six month creditor" claims. The issue is moot.